IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERNEST PRIOVOLOS,<br><br>              Plaintiff,<br><br>   v.<br><br>CPL. AARON M. RICHWINE and<br>WARWICK POLICE DEPT. AND/OR<br>TOWNSHIP,<br><br>              Defendants. | CIVIL ACTION<br>NO. 12-761 |

**OPINION**

**Slomsky, J.**                                                                                                             **April 18, 2013**

## I.   INTRODUCTION

Plaintiff Ernest Priovolos initiated the instant civil rights action against Defendants Corporal Aaron Richwine ("Cpl. Richwine") and Warwick Police Department and/or Township ("Warwick Township") based on an incident that occurred on June 18, 2011. On that day, Cpl. Richwine arrested Plaintiff for driving under the influence ("DUI"). Plaintiff claims that Cpl. Richwine arrested him for DUI without probable cause and during the arrest used excessive force, both in violation of his Fourth Amendment rights. Plaintiff also contends that Cpl. Richwine intentionally inflicted emotional distress on him in violation of state law.

Following discovery, Defendants jointly moved for summary judgment on all claims. For reasons that follow, the Court will grant Defendants' Motion.[1]

---

[1] In deciding this Motion, the Court has considered the following: Defendants' Motion for Summary Judgment (Doc. No. 27); Defendants' Statement of Material Undisputed Fact (Doc. No. 28), including the attached Complaint (Doc. No. 28-1), Cpl. Richwine's Deposition (Doc. No. 28-2), Plaintiff's Deposition (Doc. No. 28-3), Video of Plaintiff's Arrest (Doc. No. 29), Warwick Township Use of Force Policy (Doc. No. 28-5), Police Reports (Doc. No. 28-6); and Plaintiff's Response in Opposition to the Motion for Summary Judgment (Doc. No. 31).

## II.     FACTUAL BACKGROUND

The following facts are recited in a light most favorable to Plaintiff as the non-moving party.[2]  In 2011, Plaintiff had two main sources of income: delivering AutoShopper magazines to local businesses for a company based in Toms River, New Jersey, and cleaning job sites for his brother's roofing and siding company.  (Doc. No. 28-3 at 3-4, 6.)

On Saturday, June 17, 2011, he spent the morning and early afternoon working for his brother in Horsham, Pennsylvania.  (Id. at 6.)  Plaintiff testified that around 2 p.m. he and his brother bought lunch at a nearby Wawa and split a quart of beer purchased from an adjacent bar.  (Id. at 6-7.)  After lunch, Plaintiff drove his van to a second job site, where he worked until early evening.  (Id. at 6, 10.)  Plaintiff ended his working day by delivering AutoShopper magazines until about 11:00 p.m.  (Id. at 6-7.)  He then went through the drive-thru at a local Burger King, and proceeded to spend the next couple hours driving around Bucks County in an attempt to locate his brother.  (Id. at 7.)

At approximately 1:15 a.m., on Sunday, June 18, 2011, Plaintiff was pulled over by Cpl. Richwine for speeding in Warwick Township.  (Id. at 7-8.)  Their entire encounter has been captured on video with an audio component.  (See Doc. No. 29.)  On the video, Cpl. Richwine, the only officer on the scene initially, approached the driver's side window of Plaintiff's vehicle and asked Plaintiff for his driver's license and if he had been drinking that day.  (Id.; Doc. No.

---

[2] This factual narrative is drawn almost entirely from Plaintiff's deposition (Doc. No. 28-3) and the video of Plaintiff's arrest taken from Cpl. Richwine's patrol car (Doc. No. 29).  Plaintiff does not dispute the authenticity of the police video.  (See Doc. No. 28-3 at 14.)  The Court has watched the video.  The events and conversations taking place on the video can be seen and heard clearly.

2

28-3 at 9.) Plaintiff told Cpl. Richwine that he had a "quart of beer" with some "guys" after work.[3] (Doc. No. 29 at 01:34 – 01:35.)

After running a check on Plaintiff's license, Cpl. Richwine returned to the vehicle and attempted to give Plaintiff a preliminary breath test while he still remained seated inside his van. (Id.) Under Pennsylvania law, an officer is authorized to conduct the breath test.[4] (Doc. No. 28 at 2.) At his deposition, Plaintiff testified that Cpl. Richwine "came [back] to the car and he reached in the car and he hit me with the plastic tube right on my lower lip. . . . [which] split my lip a little bit." (Doc. No. 28-3 at 9.) Plaintiff admittedly said nothing about the alleged injury to Cpl. Richwine. (See id.) The results of the preliminary breath test showed that Plaintiff had a blood alcohol concentration of .14%, which is in excess of the legal limit of .08%.[5] (Doc. No. 28 at 2); 75 Pa. Cons. Stat. 3802(a)(2).

---

[3] On the video, Plaintiff is clearly heard telling Cpl. Richwine that he had a "quart of beer" with some "guys" after work. In his deposition, as noted above, Plaintiff testified that he split a quart of beer with his brother earlier in the day. Although there is a slight difference between the two versions, the critical fact is that in both instances Plaintiff admits he was drinking that day.

[4] 75 Pa. Cons. Stat. § 1547(k) states:

> A police officer, having reasonable suspicion to believe a person is driving or in actual physical control of the movement of a motor vehicle while under the influence of alcohol, may require that person prior to arrest to submit to a preliminary breath test. . . . The sole purpose of this preliminary breath test is to assist the officer in determining whether or not the person should be placed under arrest.

[5] Plaintiff disputed the results of the breath test at his deposition. He testified: "I don't know how [Cpl. Richwine] got to that. He might have mistaken me for another guy he stopped." (Doc. No. 28-3 at 18.)

Cpl. Richwine then directed Plaintiff to step out of the vehicle so he could administer several field sobriety tests.[6] (Doc. No. 28-3 at 10.) He provided Plaintiff with instructions, including a personal demonstration, on three separate tests: (1) standing in one place with head tilted back; (2) walking heal-to-toe in a straight line; and (3) standing with one-leg raised. (Id. at 11.) Prior to taking the tests, Plaintiff informed Cpl. Richwine that he "had a bad knee and . . . [fell] off a ladder." (Id.) Although Plaintiff testified that he also had a bad back, he admits that he did not tell Cpl. Richwine about his back problems prior to taking the tests. (See id. at 11-12.) Regardless of his medical complaints, Plaintiff testified and the video confirms, that he had difficulty performing two of the three field sobriety tests. (See id. at 12; Doc. No. 29 at 01:37 – 01:38.)

After completing the third test, Cpl. Richwine placed Plaintiff under arrest for DUI. (Doc. No. 28-3 at 12; Doc. No. 29 at 01:38.) The entire encounter lasted less than six minutes. (See Doc. No. 29 at 01:32 – 01:38.) After the arrest, Cpl. Richwine gave him several opportunities to take a chemical test, which he refused, despite Cpl. Richwine's warning that his license would automatically be suspended under Pennsylvania law. (Doc. No. 28-3 at 13.) Plaintiff was taken briefly to the police station, fingerprinted, and then Cpl. Richwine "was nice enough to drive [him] home, because nobody answered the phone [at his house]." (Id.) Plaintiff has not had any type of mental health counseling or physical therapy as a result of Cpl. Richwine's conduct.[7] (Id. at 17.)

---

[6] During the field sobriety tests, another officer arrived on the scene. Plaintiff does not know the identity of the other officer, nor did he have any interaction with him. (Doc. No. 28-3 at 12-13.) Therefore, the Court will not refer to this officer in the Opinion.

[7] Plaintiff described the full extent of his physical injury as follows: "Just other than I had a little abrasion on my lip. That's it. . . . I mean, [Cpl. Richwine] didn't bully [me] around or nothing like that. Sometimes that happens. But that wasn't the case here." (Doc. No. 28-3 at 14.)

Plaintiff was later found not guilty of DUI in state court. (Id. at 15.) However, as Cpl. Richwine had warned, Plaintiff lost his driver's license for a period of time for refusing to take a chemical test. (Id.) Moreover, Plaintiff was on state parole on June 18, 2011, and his arrest for DUI was a violation of his parole conditions. This resulted in his parole officer taking action that returned him to prison for several months. (Id. at 15-16, 18.)

On February 21, 2012, Plaintiff filed the instant Complaint based on the above encounter. Specifically, the Complaint claims:

(1) Cpl. Richwine used excessive force in violation of the Fourth Amendment during his encounter with Plaintiff;
(2) Cpl. Richwine arrested Plaintiff without probable cause in violation of the Fourth Amendment;
(3) Warwick Township failed to properly train and supervise officers under the Fourth and Fourteenth Amendment; and
(4) intentional infliction of emotional distress under Pennsylvania law based on Cpl. Richwine's use of excessive force and false arrest.

(See Doc. Nos. 3 and 27.)[8] Defendants now move for summary judgment on all claims.[9]

---

Plaintiff's lip did not bleed that night, nor did he seek any medical treatment for the abrasion. His lip healed after about four days using only lip balm. (Id. at 10.)

[8] Plaintiff initiated this case pro se, but has since obtained counsel to represent him. (See Doc. Nos. 1 and 19.) Counsel for Plaintiff has prepared, among other things, the Response in Opposition to Defendants' Motion for Summary Judgment. (See Doc. No. 31.) In Defendants' Motion for Summary Judgment, they interpreted the handwritten Complaint filed by Plaintiff as alleging the four claims stated above. (See Doc. No. 27 ¶ 2.) Plaintiff's Response in Opposition to the Motion for Summary Judgment confirms Defendants' characterization of the Complaint. (See Doc. No. 31 ¶ 2.) Therefore, the Court will address the above-stated claims in this Opinion.

[9] In the Motion, Defendants state: "Plaintiff has failed to develop[ ] any evidence to support a Monell claim [against Warwick Township], and that claim should be dismissed as a matter of law." (Doc. No. 27 ¶ 5.) Plaintiff responded: "Admitted." (Doc. No. 31 ¶ 5.) Based upon Plaintiff's concession that the record evidence does not support a claim against Warwick Township, and the Court's independent review of the record and relevant law, the Court will grant summary judgment in favor of Warwick Township on the Monell claim. This Opinion will cover the remaining claims against Cpl. Richwine in his individual capacity.

**III.    STANDARD OF REVIEW**

Granting summary judgment is an extraordinary remedy.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In reaching this decision, the Court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 271 (3d Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the non-moving party. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A factual dispute is "material" only if it might affect the outcome of the suit under governing law.  Doe v. Luzerne Cnty., 660 F.3d 169, 175 (3d Cir. 2011) (citing Gray v. York Papers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992)).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  Anderson, 477 U.S. at 247-249.

In deciding a motion for summary judgment, the Court must view the evidence and all reasonable inferences from the evidence in the light most favorable to the non-moving party. Macfarlan, 674 F.3d at 271; Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009). However, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).  Whenever a factual issue arises which cannot be resolved without a credibility determination, the Court must, at this stage of the litigation, credit

the non-moving party's evidence over that presented by the moving party. <u>Anderson</u>, 477 U.S. at 255. If there is no factual issue and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. <u>Id.</u> at 250.

**IV. DISCUSSION**

    **A. Cpl. Richwine is Entitled to Qualified Immunity on All Federal Claims**

Cpl. Richwine argues that he is entitled to qualified immunity on the claims that he violated the Fourth Amendment by using excessive force and arresting Plaintiff without probable cause. The Court agrees.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (citation omitted). The doctrine "protects 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Paff v. Kaltenbach</u>, 204 F.3d 425, 437 (3d Cir. 2000) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987)). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" <u>Id.</u> (citation omitted).

In resolving a government official's claim of qualified immunity, a court must decide: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." <u>Id.</u> at 232 (citations omitted). A court can address the two

7

prongs in any order. Id. at 236. "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." Id. (citation omitted).[10]

### 1. Fourth Amendment Claim of Arrest Without Probable Cause

Plaintiff contends that his Fourth Amendment rights were violated when Cpl. Richwine arrested him for DUI without probable cause. "The Fourth Amendment prohibits a police officer from arresting a citizen without probable cause." Paff v. Kaltenbach, 204 F.3d 425, 435 (3d Cir. 2000). "Probable cause exists 'whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested.'" Bergdoll v. City of York, No. 11-4353, 2013 WL 1010593, at *2 (3d Cir. Mar. 15, 2013) (quoting United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002)). "A common sense approach [should be taken] to the issue of probable cause and a determination as to its existence must be based on the totality of the circumstances." Paff, 204 F.3d at 436 (citation and quotation marks omitted). "The validity of an arrest is determined by the law of the state where the arrest occurred." Bergdoll, 2013 WL 1010593, at *2 (citation omitted).

Here, Plaintiff was arrested in Warwick Township, Pennsylvania, for DUI. In Pennsylvania, "a police officer is authorized to arrest an individual without a warrant if the officer has probable cause to believe that the individual has violated section . . . 3802 (relating to driving under influence of alcohol or controlled substance) . . . ." 75 Pa. Cons. Stat. § 3811(a). Section 3802 states, among other things, that: "An individual may not drive . . . a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely

---

[10] Because the Court finds that Cpl. Richwine did not violate Plaintiff's Fourth Amendment rights, the Court does not need to address whether those rights were "clearly established." See Bergdoll v. City of York, No. 11-4353, 2013 WL 1010593, at *2 n.2 (3d Cir. Mar. 15, 2013).

driving . . . ." Id. § 3802(a)(1).  Probable cause to arrest for DUI is determined, as stated above, based on the totality of the circumstances.  See, e.g., Commonwealth v. Semuta, 902 A.2d 1254, 1259-60 (Pa. Super. Ct. 2006) (finding that the defendant's nighttime driving without headlights, odor of alcohol, difficulty with field sobriety tests, and his admission that he drank two beers was sufficient probable cause to arrest for DUI).

In this case, viewing the facts in the light most favorable to Plaintiff, Cpl. Richwine did not violate Plaintiff's Fourth Amendment rights.  At the time of arrest, Cpl. Richwine was aware of the following facts:  (1) Plaintiff was speeding at approximately 1 a.m.; (2) he drank a quart of beer at some point prior to driving; (3) he failed the breath test; and (4) he did not satisfactorily perform two of the three field sobriety tests.  Under Pennsylvania law, these facts, considered together, constitute probable cause to arrest Plaintiff for DUI.[11]  Since there was probable cause to arrest Plaintiff, no constitutional violation occurred in this respect.  Cpl. Richwine is therefore entitled to qualified immunity on the claim of arresting Plaintiff without probable cause. Accordingly, the Court will grant the Motion for Summary Judgment in favor of Cpl. Richwine on the Fourth Amendment claim of arrest without probable cause.

---

[11] The fact that Plaintiff was ultimately found not guilty of DUI has no bearing on the determination of whether probable cause existed at the time of his arrest.  See Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) ("[A]n arrest based upon probable cause will be justified, regardless of whether the individual arrested was guilty or not.").  Moreover, Plaintiff's claim that he could not understand how the results of the preliminary breath test were so high, and how his medical condition influenced the results of the field sobriety tests, does not undermine the objective facts which show that Cpl. Richwine had probable cause to arrest Plaintiff for DUI.  See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."); Potts v. City of Phila., 224 F. Supp. 2d 919, 934 (E.D. Pa. 2002) ("A police officer, after all, is not obligated 'to conduct a mini-trial' before arresting a suspect.").  For this reason, Plaintiff's factual dispute does not raise a genuine issue of material fact.

### 2. Fourth Amendment Claim of Excessive Force

Next, Plaintiff claims that Cpl. Richwine used excessive force in violation of the Fourth Amendment during the arrest for DUI.  "[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989).  "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  Id. at 397.  Factors "such as 'the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time'" can be considered in the reasonableness inquiry.  Green v. N.J. State Police, 246 F. App'x 158, 161 (3d Cir. 2007) (citation omitted).

However, "[i]t is well-established that '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'"  Watson v. Haverford Twp. Police Dep't, No. 10-6731, 2012 WL 1900629, at *13 (E.D. Pa. May 25, 2012) (quoting Graham, 490 U.S. at 396).  "The force used must rise above a de minimis level for a constitutional claim to arise."  Foster v. David, No. 04-4829, 2006 WL 2371976, at *7 (E.D. Pa. Aug. 11, 2006) (citing Ingraham v. Wright, 430 U.S. 651, 674 (1977)).  For instance, in Ankele v. Hambrick, the plaintiff was involved in a car accident shortly after drinking several beers at a nearby bar.  No. 02-4004, 2003 WL 21223821, at *1 (E.D. Pa. May 7, 2003).  Local police officers arrived on the scene to investigate the accident.  Id.  As one of the officers started to ask the plaintiff questions, the plaintiff began walking away.  Id. at *2.  This "little dance"

then repeated itself several times: the officer would move toward the plaintiff and the plaintiff would slowly back away. Id. at *10. The plaintiff testified that the officer then "grabbed [him], threw [him] on the back of the [police] car, ripped everything out of [his] pockets and immediately handcuffed [him] and put [him] in the back of the [police] car." Id. at *2. As a result of the officer's actions, the plaintiff suffered "soft tissue injuries" to his body. Id. He then filed a Fourth Amendment claim of excessive force, among other claims, against the arresting officer. Id. at *1.

After discovery, the officer moved for summary judgment on the excessive force claim arguing that his conduct was objectively reasonable in light of the circumstances. The court agreed and concluded that the de minimis physical contact used by the officer did not rise to the level of a constitutional violation. Id. at *10. In reaching this decision, the court noted that:

> Although pushing [the plaintiff] over the hood of the patrol car may have been unnecessary, an allowance must be given to the officer because he was the one confronted with this uncertain situation. Moreover, the alleged injuries suffered by [the plaintiff] are limited to soft tissue injuries, and are not substantiated with any medical documentation. Thus, the force applied here fails to rise to the level of a constitutional violation.

Id. (internal citations omitted).

In this case, as in Ankele, Cpl. Richwine's de minimis physical contact with Plaintiff was "objectively reasonable" in light of the circumstances confronting him that evening.[12] Cpl. Richwine, acting alone, pulled Plaintiff over in the middle of the night for speeding. Plaintiff admitted to having a quart of beer earlier, and therefore Cpl. Richwine attempted to administer a

---

[12] "[R]easonableness under the Fourth Amendment should frequently remain a question for the jury; however, defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004) (internal citations and quotation marks omitted).

preliminary breath test, as he was authorized to do under Pennsylvania law.  In attempting to conduct the test, Cpl. Richwine allegedly "hit [Plaintiff] with the plastic tube right on [his] lower lip. . . . [which] split [his] lip a little bit." (Doc. No. 28-3 at 9.)

The split lip is Plaintiff's sole basis for the excessive force claim as Plaintiff stated at his deposition: "Just other than I had a little abrasion on my lip.  That's it. . . .  I mean, [Cpl. Richwine] didn't bully [me] around or nothing like that.  Sometimes that happens.  But that wasn't the case here." (Doc. No. 28-3 at 14.)  Plaintiff's lip did not bleed, he did not tell Cpl. Richwine he was in any pain, nor did his lip require any immediate or long-term medical care.

Prior to being arrested, Plaintiff and Cpl. Richwine only interacted for about six minutes.  The fact that, while Cpl. Richwine was carrying out his official duties, he may have caused a slight abrasion on Plaintiff's lip while Plaintiff was sitting in his vehicle is not sufficient to show excessive force.  Moreover, at that point, Cpl. Richwine was not in the act of arresting Plaintiff but merely administering a breath test to determine if there was probable cause to believe Plaintiff was driving under the influence.

Given the de minimis nature of the injury, the force applied here does not rise to a constitutional violation.  Cpl. Richwine is therefore entitled to qualified immunity on the excessive force claim because there was no constitutional violation.  Accordingly, the Court also will grant the Motion for Summary Judgment in favor of Cpl. Richwine on the Fourth Amendment claim of use of excessive force.

### B. The Evidence is Insufficient to Show Intentional Infliction of Emotional Distress

Under Pennsylvania law, Plaintiff claims that Cpl. Richwine's conduct amounted to intentional infliction of emotional distress.  A claim of intentional infliction of emotional distress is a "tort [that] requires . . . intentional extreme and outrageous conduct on the part of the

tortfeasor, which causes severe emotional distress to the plaintiff." Weiley v. Albert Einstein Medical Center, 51 A.3d 202, 216 (Pa. Super. Ct. 2012) (citing Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998)). "Only if conduct which is extreme or clearly outrageous is established will a claim be proven. . . . [T]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Hoy, 720 A.2d at 753-54 (citation and quotation marks omitted).

In this case, the evidence of record does not rise to the level necessary to state a legally sufficient claim of intentional infliction of emotional distress. First, Plaintiff testified that he was not hospitalized for any mental health or physical condition as a result of his June 18, 2011 encounter with Cpl. Richwine, nor has Plaintiff had any type of mental health counseling or physical therapy as a result of Cpl. Richwine's conduct. Simply stated, he has not suffered any severe emotional distress.

Second, as noted above, Plaintiff acknowledged, and the video of his arrest confirms, that Cpl. Richwine "didn't bully [him] around or nothing like that." (Doc. No. 28-3 at 14.) In fact, after Plaintiff was processed at the police department for the DUI, Plaintiff explained that Cpl. Richwine "was nice enough to drive me home, because nobody [at home] answered the phone." (Id. at 13.) There is no evidence that Cpl. Richwine did anything extreme or outrageous during his encounter with Plaintiff on June 18, 2011. Therefore, the Court will grant the Motion for Summary Judgment in favor of Cpl. Richwine on the claim of intentional infliction of emotional distress.

**V.     CONCLUSION**

For the foregoing reasons, the Court will grant the Motion for Summary Judgment in favor of Defendants Cpl. Richwine and Warwick Township on all claims. An appropriate Order follows.